[Decided June 29, 1893.]

## JOHNSON *v.* HAMILTON.

[S. C. 33 Pac. Rep. 571.]

1. CUSTOM AND USAGE—EVIDENCE.—In an action to recover the contract price of sawlogs, which were to be "suitable and usual" for defendant's mill, and the "commercial purposes" thereof, it is not error to refuse to allow plaintiffs to cross-examine as to the lengths of logs delivered, in order to show their unsuitableness, meaning of the terms quoted, unless the terms are shown to have a local or peculiar significance, or the witness is qualified to testify on the subject.

2. EVIDENCE.—In an action to recover the contract price for cutting sawlogs, a written notice by the defendant of a rescission of the contract given after the action was commenced, cannot be admitted on the ground that it explained the plaintiffs' failure to put the logs already cut on the railway, where the notice does not in terms forbid this, and the plaintiffs have testified that the defendant requested them to put them on, and they refused to do so unless the notice was rescinded.

3. EVIDENCE—PAYMENTS.—The withdrawal from the consideration of the jury, of all testimony in regard to payments not made directly on a contract in suit, is reversible error where money was due for former work at the time the contract was entered into, and the payments were made on account without special reference to such former work or to the work done under the contract, as this was virtually withdrawing from the jury all evidence of payment and left them no basis on which to compute the amount remaining due on the contract.

4. DAMAGES.—The question of damage done by cutting the convenient timber to the neglect of the more remote, under a contract for cutting the whole timber, cannot be submitted under an assignment of a breach in cutting the timber on the ground cut over, and leaving suitable timber thereon not cut into sawlogs, and cutting and delivering unsound logs

Union County: MORTON D. CLIFFORD, Judge.

Action by W. R. Johnson and George Hull, partners, against R. D. Hamilton, to recover the price of an install-ment of logs delivered under a contract. Judgment for plaintiffs, and defendant appeals. Reversed.

*Robert Eakin,* for Appellant.

*T. H. Crawford,* for Respondent.

This is an action to recover the contract price of nine hundred and ninety-eight thousand feet of saw logs alleged to have been delivered by plaintiffs to defendant in pur-suance of a contract made and executed on the twenty-ninth day of December, 1890, by defendant as party of the first part, and plaintiffs as parties of the second part, the material portions of which are: "That whereas the first party is the owner of certain timber lands, and a saw-mill situated thereon, more particularly described herein-after, which mill he desires to operate for commercial purposes, and furnish from his said timber now standing and growing upon said lands; and now in consideration of this and the hereinafter premises, the second parties hereby undertake and agree with the first party to pro-ceed on the first day of January, 1891, and at their own expense and labor, to cut down, and to convert into suita-ble and usual saw logs, not to exceed in any instance twenty-four feet and four inches in length,   *   *   *   and to deliver same upon rollways of first party, ready for the saw, at first party's said saw mill," situated on certain premises described in the contract, "all sound fir, tam-arack, and pine timber which will square seven by eight inches, and make merchantable lumber, which is standing or situated upon" certain real estate in the contract described, and "to furnish all such logs to first party's mill as fast as said mill can saw and dispose of the same to the amount of at least thirty-five thousand scaled feet per day if required by the first party. All of said timber

is to be scaled by a competent scaler to be selected by both parties as fast as delivered, and each party is to pay half of his wages not to exceed two cents per one thousand feet. In case that the first party fails to provide rollways fast enough for second party to place the same thereon, then the logs may be approximate on the bank, but the same is not final till on the rollway. The aforesaid logs are all to be furnished by the second parties to the first as aforesaid as rapidly as possible and within three years hereafter, and the second parties are bound herein to cut over the ground so as not to cull or take from the convenient and neglect the remote portions of the ground to be cut over, and they respond in damages for not complying with this provision. And in consideration of which the first party agrees to pay the second parties for said logs after they are scaled and so delivered, two dollars and fifty cents per one thousand feet; such payments are to be as follows: For the logs furnished during January and February, 1891, to be paid for on the first day of April following, but the second parties' orders for camp supplies and laborers' necessary wages, shall be honored by first party in the meantime not to exceed in the aggregate the amount due for the following months, it shall be due and payable on the fifteenth day of the month following each month for that month. The rollways above mentioned are to be built and maintained as soon as possible."

The complaint avers that plaintiffs entered upon the performance of the contract on the first day of January, 1891, and between that date and the first day of May following cut and delivered to defendant, as provided in the contract, about nine hundred and ninety-eight thousand feet of logs of the stipulated value of two dollars and fifty cents per thousand, amounting in the aggregate to two thousand five hundred and five dollars and two cents; that no part of the same has been paid except one thousand eight hundred and seventy-three dollars and seventy-

two cents, and that there remains due and owing from said defendants the sum of six hundred and thirty-one dollars and thirty cents thereon. The answer denies that plaintiff cut and delivered on the rollways of defendant, as provided in the contract, any other or greater amount of logs than one hundred and thirty-seven thousand two hundred and seventy-six feet of the contract value of three hundred and forty-three dollars and nineteen cents, and for a further and separate defense avers that on or about the eighth day of February, 1891, and during the time alleged in the complaint, the plaintiffs, in violation of the contract, commenced to cut and deliver other saw logs, and between that time and the first day of May, 1891, cut and delivered at defendant's sawmill about four hundred and twenty-two thousand eight hundred and thirty-three feet of saw logs in the aggregate and no more, but not as agreed by the plaintiffs in their contract, the terms of which they violated as follows, and to defendant's special damage thereby, to-wit: "That in cutting said timber for said saw logs the plaintiffs agreed in said contract to furnish and deliver none but such as should be suitable and usual saw logs for defendant's said sawmill, and the commercial purposes thereof; that said suitable and usual saw logs for defendant's said sawmill and the commercial purposes of said mill required that said logs should be cut in proportionate quantities of the length of twelve and one third feet, fourteen and one third feet, sixteen and one third feet, twenty and one third feet, and twenty-four and one third feet," and that plaintiffs well knew the same when they so contracted, but, unmindful of their said agreement, wilfully and persistently, against defendant's orders, cut nearly all of said logs of from sixteen and one third to seventeen and one third feet, thus leaving an overstock of one length of lumber, and that the balance was of unmerchantable lengths, with no assortment for commercial purposes, as well as a waste to defendant in his timber of

nearly a foot in the length of each log, to defendant's damage in the sum of two hundred and fifty dollars. "That further the plaintiffs agreed by their contract to cut all of the sound fir, tamarack, and pine timber of a certain size on the ground cut over, and not to cull the same, but that plaintiffs violated their said contract by culling and wasting said timber, leaving suitable saw logs in the tops left on the ground, by culling the trees easiest got at, leaving those requiring more labor and time to so convert into suitable logs, and deliver the same, as well as cutting and delivering a lot of unsound logs (wind-shaken and decayed in nearly twenty per cent of the lot) to defendant's damage in the sum of three hundred and fifty dollars." And, as a further defense, the answer alleges, that during the period from the thirty-first of December, 1890, to the first of May, 1891, the defendant advanced and paid plaintiffs, under and by virtue of said contract, the aggregate sum of two thousand two hundred and sixty-three dollars and eighty-eight cents which is pleaded as a counterclaim and set off to plaintiffs' claim and as an overpayment of the same. The reply denies all the material allegations of the answer.

The trial in the court below resulted in a judgment for the plaintiffs, from which the defendant appeals. Reversed.

MR. JUSTICE BEAN delivered the opinion of the court:

1. The first error assigned and relied upon for a reversal of the judgment relates to the action of the trial court in sustaining objections made by the plaintiffs to questions asked the plaintiff Johnson on cross-examination, as to how many of the logs delivered by him were twelve feet long, and how many of other lengths, and also in sustaining objections to the following questions asked the defendant on direct examination: "What is meant by the term, 'commercial purposes,' as used in the con-

tract?"  "What does the term, 'suitable and usual saw logs,' as used in the contract, mean?"  "What character of logs does the commercial character of that mill require?" In this we think there was no error.  It was the duty of the court and not of the witness to construe the contract, and define the meaning of the terms used therein.  If the words, "commercial purposes" and "suitable and usual saw logs," had, by usage or custom, a local or peculiar signification, as defendant now contends, and were so used and understood by the parties to the contract, it would have been competent for the defendant to have shown that fact by the evidence of persons who had such knowledge of the practice and course of business in that particular line as to make them competent witnesses, for the purpose of ascertaining the sense in which the words were used in the contract and to assist the court in its construction:  Hill's Code, § 697.  It was not, however, shown in this case that the words had any local or peculiar signification, or that the witness was qualified to testify upon the subject.  Unless the words "commercial purposes" and "suitable and usual saw logs," did have a local or peculiar signification, and were so used by the parties in making the contract, it is clear that the evidence sought to be elicited from the plaintiff Johnson on cross-examination as to the length of logs delivered by him was incompetent, for the contract does not provide that the logs shall be of any particular length provided they do not exceed twenty-four feet and four inches.

2.  It is also claimed that the trial court erred in permitting the plaintiffs to prove that after the commencement of this action the defendant served upon them a written notice rescinding the contract, and refusing to allow them to proceed further thereunder.  It is difficult to perceive upon what theory this evidence can be competent under the issues herein.  This action was commenced on the eighteenth day of May, 1891, to recover an

installment then alleged to be due on the contract price of certain logs claimed to have been cut and delivered by plaintiffs to defendant between the first day of January and the first day of May, 1891, in pursuance of a written contract between the parties, by the terms of which all logs so cut and delivered were to be paid for by the fifteenth day of May. The cause of action had therefore accrued, according to the allegations of the complaint, at the time this action was commenced, so that proof of the rescission or attempted rescission of the contract by defendant, after the commencement of the action, could in no way tend to prove any of the allegations of the complaint. For the plaintiffs it is argued, in support of the rulings of the court in admitting this evidence, that it was competent for the purpose of explaining plaintiff's failure to put the logs on the rollways according to their contract, prior to the commencement of the action. From the evidence it appears that part of the logs, for want of room, had not been placed on the rollway at the time the action was commenced, but had been delivered on the bank approximately near, as stipulated in the contract, but at the time notice was served upon plaintiffs the rollways had become empty, and they were proceeding to put the logs thereon when served with notice; and hence, it is claimed, the evidence was competent to show that the failure to put the logs on the rollways was the fault and misconduct of the defendant, and not of the plaintiffs. But the notice of the rescission of the contract does not in terms forbid the delivery of the logs already cut on the rollways, and the plaintiff Johnson testified that he refused to so deliver them unless the notice was withdrawn, although the defendant told him to do so and he would pay for them; so that, even if the delivery of the logs on the rollways after the commencement of the action would entitle plaintiffs to recover therefor in this action, such delivery was not prevented by reason of the conduct of the defendant,

and hence it was error prejudicial to the defendant to admit in evidence the written notice of the attempted rescission of the contract by him.

3. From the evidence it appears that plaintiffs had cut and delivered to defendant, during the months of November and December, 1890, about six hundred thousand feet of logs, upon which there was due, at the time the contract of the twenty-ninth of December was entered into, about one thousand four hundred dollars. After the December contract, defendant, from time to time, advanced and paid to plaintiffs divers sums of money upon orders drawn upon him by them, which the plaintiff Johnson testified were not drawn on any particular fund, until after March 8, 1891, but were applicable to either the November or December work, or the work done under the contract, and that "the payment of the one thousand eight hundred dollars [credited in the complaint] was by payments on our orders and accounts paid by defendant for us. I cannot give the items that were paid on this contract alone, as we had a running account, and he owed us for work done in November and December, 1890, prior to this contract." Witness then gave an itemized statement of the payments made after the first day of January, 1891, which amounted in the aggregate to two thousand one hundred and four dollars and sixty-six cents, and then says that "part of that amount was applicable to the November and December work; I do not know how much; there were payments also made in November and December, 1890, on the work of those two months." The defendant testified that the November and December work amounted to one thousand four hundred and seventy-three dollars, according to a settlement between him and the plaintiffs made on March 2, 1891, and that he advanced and paid to plaintiffs, on the November and December work, and on work done under the contract, from November, 1890, to May 1, 1891, a total sum of three thou-

sand six hundred and ninty-one dollars and sixteen cents, giving a statement of the items, and that said items were paid on account, without particular application to either, and he also put in evidence the vouchers therefor. On motion of the plaintiffs the court withdrew from the jury all testimony in regard to payments not made on the contract in this action, and the checks, receipts, and orders relating thereto, for the reason, as the bill of exceptions states, "that it includes items paid on the November and December work, and that the payments proved should be confined to payments made on the contract." It appears from the testimony of both the plaintiffs and defendant that the payments were made on account, without special reference to the November and December work, or the work done under the contract, and that neither party was able to separate the amount applicable to either account, except by applying to the contract the balance remaining after paying for the November and December work, and under such a state of facts it seems to us to have been error for the court to undertake to withdraw from the consideration of the jury all testimony in regard to payments not made directly on the contract in this action, and confine the testimony to payments made on the contract, as such a rule would virtually deprive the defendant of all evidence of payments on the contract. The entire evidence, it seems to us, should have gone to the jury, with a direction to apply to the contract the balance remaining after payment for the November and December work.

4. The next and remaining alleged error is in the refusal of the court to give the following instructions: "By the terms of the contract the plaintiffs could not cull the timber, and if they cut the convenient timber to the neglect of the remote portions of the ground mentioned, they are responsible to the defendant in this action for such damages as defendant has shown by the proof he has sustained by reason thereof"; and, "by the terms of the con-

tract the plaintiffs are not permitted to cut all the near timber, neglecting the remote until all the near timber is removed.   The contract specifying three years as the time for completing the taking off of said timber, does not permit plaintiffs to postpone the cutting of all the remote timber until the last."   Conceding these two instructions to have stated the law correctly, as an abstract proposition, it seems to us they were not applicable to any issues made by the pleadings in this case.   The alleged breach of the contract, relied upon by defendant, as averred in the answer, is that "plaintiffs agreed by their said contract to cut all the sound fir, tamarack, and pine timber of a certain size on the ground cut over, and further not to cull the same, but that plaintiffs violated their said contract by culling and wasting said timber, leaving suitable saw logs in the tops left on the ground, by culling the trees easiest to get at, leaving those requiring more labor, and to so convert into suitable saw logs and deliver the same, as well as cutting and delivering a lot of unsound logs, windshaken and decayed in nearly twenty per cent of the lot, to defendant's damage of three hundred and fifty dollars, it requiring from fifty cents to a dollar a thousand feet more to utilize the timber left on the ground, and in inconvenient localities of the ground cut over than the contract price of plaintiffs."   This allegation is not clear and distinct, and it is difficult to determine just what the pleader intended; but it seems that the more reasonable construction of the allegation is that the breach of the contract attempted to be assigned and relied upon is for culling the timber on the ground cut over, and leaving suitable timber thereon not cut into saw logs, and cutting and delivering a lot of unsound logs.   It is not alleged that respondents had violated their contract by cutting all or any of the near timber to the neglect of the remote, or by cutting the convenient timber to the neglect of the remote portions of the ground to be cut over, and for these rea-

sons, and upon this construction of the allegations of the answer, it seems to us that the instructions asked and refused attempted to present to the jury a question not made by the pleadings, and therefore were properly refused.

It follows that the judgment must be reversed and a new trial ordered.    REVERSED.